UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
————————————————————X
LUBOS NAPRSTEK,

                    Plaintiff,                              <u>COMPLAINT</u>

—Against—                                              JURY TRIAL
                                                    DEMANDED

MARRIOTT INTERNATIONAL, INC.
d/b/a JW MARRIOTT ESSEX HOUSE
NEW YORK *and* HOTEL, RESTAURANT
AND CLUB EMPLOYEES AND
BARTENDERS UNION LOCAL #6
AFL CIO

                              Defendant.
————————————————————X
LUBOS NAPRSTEK, by the Law Offices of Ambrose Wotorson, alleges as follows:

## I.    <u>INTRODUCTION</u>

1. This is an action to vindicate the civil rights of Plaintiff, whom defendants, Marriott International, Inc. d/b/a JW Marriott Essex House (hereinafter "Marriott") and Hotel, Restaurants and Club Employees and Bartenders Union Local #6 AFL CIO, allowed to be subjected to prior alienage discrimination, national origin discrimination, age discrimination, a hostile work environment, retaliatory animus and materially adverse employment actions, despite his reasonable complaints and prior warnings.

2. As well, defendant, Marriott, breached Plaintiff's City-wide collective bargaining agreement, and defendant, Hotel, Restaurant And Club Employees Union Local #6 (hereinafter, "Union") utterly failed in its duty to fairly represent Plaintiff in fully prosecuting claims to address the breach.

## II.  JURISDICTION

3.  This court has jurisdiction over the instant matter under 42 U.S.C. Section 1981 and Section 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185.

4.  This Court also has jurisdiction over the instant action under 28 U.S.C. § 1332, as there is complete diversity of the parties, and the controversies at issue are valued at more than $75,000.

5.  Venue is proper, as the complained of events occurred in this judicial district.

## III.  PARTIES

6.  Plaintiff, Lubos Naprstek is an individual with an address of 24 Briar Court Hamburg, NJ 07419, and he is domiciled in that state.

7.  Defendant, Marriot International, Inc., has its principal place of business and headquarters at 10400 Fernwood Road, Bethesda, MD 20817.

8.  Defendant, Hotel, Restaurant And Club Employees Union Local #6 AFL CIO (hereinafter, "The Union" or "Local #6") has as its principal place of business located at 709 8th Avenue New York, NY 10036.

9.  There is complete diversity between the parties.

## IV.  FACTIAL AVERMENTS

10. Plaintiff re-alleges all of the prior paragraphs above, as if fully stated

*Collective Bargaining Agreement*

11. Plaintiff became employed with Essex House, a hotel, on September 19, 1991 as an A-list banquet waiter.

12. Plaintiff has been a dues-paying member of the Union, Local 6 with a New York City-wide collective bargaining and corresponding benefits since the time of his hire in 1991.

13. Critically, the banquet waiters, such as Plaintiff, had a collective bargaining agreement that was specific to banquet waiters that contained rules on related assignments, pay and leave which could not be changed unilaterally or without the agreement and/or the written imprimatur of the union membership.

14. The collective bargaining agreement, amongst other things, gave A-list banquet waiters a priority work schedule and had no minimum amount of hours that the A-list banquet waiters were mandated to work.

15. This collective-bargaining agreement had been in effect, since in or about 1992 and it was City-wide, applying to all banquet waiters at all luxury hotels in the City of New York.

*Marriott Acquires Essex House*

16. Defendant, Marriott, acquired the hotel,  "Essex house," in or about September 2012.

17. In connection with defendant Marriot's acquisition of Essex house, the hotel and its restaurant were renovated, several older restaurant employees were terminated and/or bought out with severance packages, and new restaurant staff was hired.

18. Upon information and belief, Marriot sought to pursue a similar course with the hotel's special banquet staff, of which Plaintiff, was and is, a member.

19. However, upon information and belief, Marriot not only encountered resistance to the same, but it was prohibitively expensive to buy out banquet staff, the majority of whom earned $170,000 or more per annum.

*New Rule Unilaterally Imposed*

20. However, defendant Marriot unilaterally began instituting sweeping changes to the aforementioned rules related to assignments, pay and leave for its banquet waiters.

21. Indeed, after the acquisition of Essex House, Marriot began to institute, hotel by hotel, a new 80% work and attendance policy which required all employees to work 80% of available work time, and that failure to so work would be a terminable offense and/or result in forfeiture and credit hours counted towards pension benefits.

*Disparate Impact upon Older, longer-termed A-list Waiters*

22. This policy adversely impacted older workers, including Plaintiff, who was born on 11-28-64, who simply would not be physically able to work the exorbitant 80% of the available hours that their younger counterparts were better positioned, physically, to perform.

23. Moreover, under Marriott' unilaterally imposed rules, Plaintiff and those similarly situated, under the 80% attendance and work policy, also had a narrow window within which to request time off, further imposing undue hardships upon older workers who were less likely to be able to work 80% of available hours without adequate time off.

24. Upon information and belief, Marriott International eventually instituted this policy at the former Essex House hotel where Plaintiff worked,  as a means of ridding itself of older, and more experienced banquet staff.

25. Indeed, Marriott knew or reasonably should have known, that older banquet waiters could not possibly work the exorbitant hours that their younger counterparts were better positioned, physically, to perform.

*Union Conceals Failures*

26. Plaintiff's Union made little or no effort to contest these new rules, and concealed from Plaintiff and others, until late April 2021, that it had neither contested nor appealed an adverse arbitration ruling related to these unilaterally rule changes in November 2019.

27. Indeed, an arbitration award of November 6, 2019 in favor of Marriott, was, upon information and belief, the product of fraud and collusion.

28. Moreover, one of the Union's delegates, Efstratiou Stamatis, falsely represented to Plaintiff and other members in late 2019,  that he and the local were coordinating efforts to challenge the and/or to otherwise challenge the adverse November 2019 arbitration ruling upholding all of the aforementioned unilateral rule changes.

29. Plaintiff, however, did not discover until April 2021, that no such challenge or appeal was launched, and that defendant union had determined not do so, without so informing the banquet wait staff.

*Union Colludes With Management*

30. Upon information and belief, Stamatis, a union delegate, was contemporaneously aware of the Union's failure and/or refusal to contest or to otherwise appeal the adverse arbitration award, but failed to so inform the banquet wait staff membership.

31. In fact, Stamatis, who had outsized power within the Local, had a history of concealing facts to other banquet wait staff and of manipulating other banquet wait staff, such as, for example, by having them sign false and malicious petitions, complaints or grievances that he, Stamatis wrote, against other banquet wait staff.

*Continued Adverse Consequences of Marriott's Unilateral Rule Changes*

32. As consequence of the Marriott's new unilateral policies, more than double the amount of "A-list" waiters were added to the existing banquet wait staff.

33. This flouted prior rules and understandings under the City-wide Collective Bargaining agreement because adding more waiters considerably diluted Plaintiff's and those similarly situated, expected and guaranteed work assignment scheduling, and thus, considerably lessened their incomes as well.

34. Upon information and belief, this dilution was designed to save Marriot money by lessening the amount of pay that older and long-termed banquet waiters would receive.

35. Additionally, under Marriott's new unilateral rule changes, banquet functions were distributed to the room service private rooms and/or to an la carte restaurant system. This too, considerably lessened the amount of scheduled work assignments that Plaintiff and those similarly situated received, thus, substantially lessened earnings that were guaranteed by City-wide collective bargaining rules and understandings.

36. Further, under the new practices, all in open contravention of the City-wide rules, Marriot has increased banquet service fees without also increasing banquet wait staff gratuities. Indeed, Under the City-wide collective bargaining agreement, Plaintiff and others similarly situated, were entitled to receive increased gratuities if there was, as here, a percentage increase in banquet service fees.

37. Instead, Marriott has been keeping, and has otherwise refused to share such extra proceeds by way of increased gratuities since at least since 2014, and that wrong is ongoing in nature.

38. Upon information and belief, Marriott has improperly withheld more than $500,000.00 in such compensation to Plaintiff and similarly situated banquet wait staff, along with a

contractually imposed 15% penalty. That financial wrong is ongoing in nature, and those damages continue to accrue.

*Plaintiff's Protected Activities*

39. Plaintiff has complained about these and similar matters, including retaliatory bullying, national origin discrimination, and a hostile work environment to the Local 6 Business Manager, Harry Rygor, but generally, he has refused to listen or to discuss the matters with Plaintiff, even after numerous requests.

40. Between 2015 and 2019, Plaintiff ha vociferously  protested and advocated for retroactive payments on gratuities that were wrongfully withheld by defendants, as per new rules that Marriott unilaterally instituted without the consent or imprimatur of the union membership.

*Retaliation and Creation of Hostile Work Environment*

41. Plaintiff has been subjected to retaliatory animus in the extreme, both by management and his own Union because of his vociferous advocacy in opposition to Marriott's unilateral imposition of policies and rules in contravention of the City-wide collective bargaining agreement and because of his complaints concerning age discrimination, prior alienage national origin discrimination  and a hostile working environment.

42. Indeed, as a consequence of his vociferous advocacy in opposition to Marriott's unilateral imposition of policies and rules in contravention of the City-wide collective bargaining agreement and his position that that they also had an age discriminatory impact, Union Delegates, and other wait staff at the instigation of Union Delegates, have variously claimed that his complaints were jeopardizing their jobs as well as his own job, and resorted to bullying tactics against Plaintiff, which are still ongoing in nature.

43. These bullying tactics included engaging in a pervasive name-calling campaign and falsely accusing plaintiff of theft, all of which created a retaliatory and hostile work environment.

44. By 2016, Stamatis, a Union Delegate and others, as a bullying tactic, resorted to telling Plaintiff that, if he persisted in his complaints and advocacy against Marriott's unilateral rules changes, he [Plaintiff] "…may not be working in the hotel next year " and he [Plaintiff] "….could be terminated like Kamal Rasmy, former Marriot employee who also vociferously opposed improper practices at Marriott and who was bullied by his own union delegates and who was eventually terminated as a consequence.

45. As well, Union delegates and other Banquet waiters at the instigation of Union delegates, subjected Plaintiff to a hostile work environment based upon his alienage and national origin.

46. Indeed, Union delegates and other Banquet waiters at the instigation of Union delegates, have pervasively, since at least 2014, called Plaintiff a "fucking a Czech communist;'" and "a fucking Communist from a Communist country."

47. Union delegates and Banquet waiters, at the instigation of Union delegates have said in earshot of Plaintiff, that "…he [Plaintiff] does not understand how things work in non-Communist country;" that, "….he is a stupid Communist;" that he "…thinks he is still in Czechoslovakia" in connection with taunts that he does not understand "…how things work in America;" that he is "…too stupid and too used to Communism to understand how things work in this county; and worse, That he is "a Stupid Communist."

48. These taunts and comments have been pervasive since 2014, they are based on Plaintiff's prior alienage and his national origin and they are ongoing in nature.

49. Also as a retaliatory measure, manager Teddy Mihaliadis approached Plaintiff and falsely accused Plaintiff in late 2016, of stealing an iPhone charger from another manager, thereby sullying Plaintiff's good name and reputation.

50. Milhaliadis knew, or had reason to know that this accusation was false.

51. Accordingly, Plaintiff complained to Human Resources about the false accusations against him and the hostile work environment he was enduring, based upon his opposition to Marriott's unilateral rules change and his discrimination claims.

52. Stamatis, a union delegate with outsize power, and a Human Resources Manager, Kelsey Grammar, pressured Plaintiff to cease his complaining, threatening that Plaintiff "ha[d] a good job making good money with good benefits," that Plaintiff "…should not jeopardize his job" by so complaining, and cited the example of another employee, Gebrial Rasmy, who had been fired after voicing numerous similar complaints and after being subjected to a barrage of false claims at the behest of Stamatis and other union delegates.

53. This false accusation of theft against Plaintiff led to substantial stress upon Plaintiff and fear that he would eventually lose his job over the false theft allegation.

54. Importantly, only after Plaintiff suffered extreme emotional distress over the allegation, did the accusing Manager, Milhaliadis, withdraw the utterly false and retaliatory accusation of theft against Plaintiff.

55. However, neither the Union nor Marriott's management, through its Human Resources Department undertook any corrective measures to end the retaliatory hostile work environment that Plaintiff continues to endure, and such retaliatory measures are ongoing in in nature. Plaintiff has continued to be subjected prior alienage and national origin based hostility and epithets even pre-pandemic, in the Spring of 2019.

## V.    CAUSES OF ACTION

FIRST CAUSE OF ACTION  -- Age Discrimination – NYSHRL

56. Plaintiff re-alleges all of the prior paragraphs above, as if fully-stated.

57. By instituting and maintaining new rules and policies that defendant, Marriott, knew or
had reason to know would disparately impact older and longer termed banquet waiters,
defendant, Marriott is engaging in intentional age discrimination in violation of Section
296 of the New York State Human Rights Law, which is ongoing in nature.

SECOND CAUSE OF ACTION  -- Age Discrimination – NYSHRL
.
58. Plaintiff re-alleges all of the prior paragraphs above, as if fully-stated.

59. By instituting and maintaining new rules and policies that defendant, Marriott, knew or
had reason to know would have a disparate impact upon older and longer-termed banquet
waiters, defendant, Marriott, is engaging in age discrimination in violation of Section 296
of the New York State Human Rights Law, which is ongoing in nature.

THIRD CAUSE OF ACTION  -- Age Discrimination – NYCHRL

60. Plaintiff re-alleges all of the prior paragraphs above, as if fully-stated.

61. By instituting and maintaining new rules and policies that defendant, Marriott knew or
had reason to know would disparately impact older and longer termed banquet waiters,
defendant, Marriott, is engaging in intentional age discrimination in violation of N.Y.C.
Admin. Code § 8-107(1)(a)(3), the New York City Human Rights Law, which is ongoing
in nature.

FOUTH CAUSE OF ACTION  -- Age Discrimination – NYCHRL
.
62. Plaintiff re-alleges all of the prior paragraphs above, as if fully-stated.

63. By instituting maintaining new rules and policies that defendant, Marriott knew, or had reason to know, would disparately impact upon older and longer-termed banquet waiters, defendant, Marriott, is engaging in age discrimination in violation of N.Y.C. Admin. Code § 8-107(1)(a)(3), the New York City Human Rights Law, which is ongoing in nature.

FIFTH CAUSE OF ACTION – National Origin Discrimination - NYSHRL

64. Plaintiff re-alleges all of the prior paragraphs above, as if fully stated.

65. By allowing Plaintiff to be subjected to National Origin Discrimination, by way of a hostile work environment, despite Plaintiff's reasonable and specific complaints about the same, defendant, Marriott, is violating Section 296 of the New York State Human Rights Law,

SIXTH CAUSE OF ACTION – National Origin Discrimination - NYCHRL

66. Plaintiff re-alleges all of the prior paragraphs above, as if fully stated.

67. By allowing Plaintiff to be subjected to National Origin Discrimination, by way of a hostile work environment, despite Plaintiff's reasonable and specific complaints about the same, defendant is violating N.Y.C. Admin. Code § 8-107(1)(a)(3), the New York City Human Rights Law, which is ongoing in nature.

SEVENTH CAUSE OF ACTION – Alienage Discrimination – Section 1981

68. Plaintiff re-alleges all of the prior paragraphs above, as if fully stated.

69. By allowing Plaintiff to be subjected to alienage Discrimination, by way of a hostile work environment, despite Plaintiff's reasonable and specific complaints about the same, defendant is violating 42 U.S.C. Section 1981, which is ongoing in nature.

EIGHTH CAUSE OF ACTION – RETALIATION

70. Plaintiff re-alleges all of the prior paragraphs above, as if fully stated.

71. By allowing Plaintiff to be subjected to Retaliation due to his protected activities, by way of a hostile work environment, despite Plaintiff's reasonable and specific complaints about the same, defendant is violating Section 296 of the New York State Human Rights Law, the New York City Human Rights Law and 42 U.S.C. Section 1981, all of which are ongoing in nature.

NINTH CAUSE OF ACTION – LABOR RELATIONS MANAGEMENT ACT

72. Plaintiff re-alleges all of the prior paragraphs above, as if fully stated.

73. Defendant, Marriott violated the Labor Relations Management Act, when it instituted an 80% attendance of work availability rule, increased a banquet services fee without correspondingly increasing Plaintiff's wage and gratuities, and moved to increase the number of priority-scheduled A list banquet waiters.  Marriott was aided and abetted by union delegates, while defendant Union, failed to contest or otherwise challenge and/or appeal an adverse ruling and fraudulently claimed that it would do so and/or that it had done so.

74. Thus, defendant hotel breached the collective bargaining agreement, and defendant union engaged in fraud, misrepresentation and a failure in the duty of fair representation, all in violation of Section 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185, as "hybrid" violation, and concealed the same until late April 2021.

**WHEREFORE,** Plaintiff prays that this Court grant judgment to him containing the following relief:

      a.   An impaneled jury;

b. Back and front pay, along with other compensation and lost benefits;

c. An award of damages for humiliation, mental pain and suffering;

d. Punitive and/or liquidated damages due to defendants' willful, reckless, malicious and egregious actions;

e. The costs of this action and Plaintiff's reasonable attorney's fees to the fullest extent permitted by law; and

f. Such other and further relief as this Court may deem just and proper.

Dated:        New York, New York
              October 17,  2021

_____x
*Ambrose W. Wotorson, Jr., Esq.*
Law Offices of Ambrose Wotorson
225 Broadway, 41st Floor
New York, New York 10007
212-884-5985
Loaww1650@aol.com