UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

LUBOS NAPRSTEK,

                      Plaintiff,

-v-

MARRIOT INTERNATIONAL, INC.,

                      Defendant.

CIVIL ACTION NO. 21 Civ. 8560 (CM) (SLC)

**ORDER**

**SARAH L. CAVE,** United States Magistrate Judge.

## I.  INTRODUCTION

Before the Court are the requests of pro se Plaintiff Lubos Naprstek ("Mr. Naprstek") for leave to (i) serve on Defendant Marriott Hotel Services LLC ("Marriott" or the "Hotel") a set of forty-three (43) Supplemental Requests for the Production of Documents (ECF No. 91 (the "Proposed Requests")) and (ii) to take the deposition of non-party Winnie Mui, Marriott's Director of Finance and Accounting (the "Deposition Request").  (See ECF Nos. 86-1 at 11; 88 at 5–8, 17–27).  Marriott opposes both requests.  (ECF Nos. 88 at 17–19; 92).  For the reasons set forth below, Mr. Naprstek's request for leave to serve the Proposed Requests is GRANTED IN PART and DENIED IN PART, and the Deposition Request is DENIED.

## II.  BACKGROUND[1]

Mr. Naprstek brings this action against Marriott, his employer, asserting claims for age and national-origin discrimination and retaliation under 42 U.S.C. § 1981, the New York State Human Rights Law, and the New York City Human Rights Law.  (ECF No. 1 (the "Complaint")

---

[1] This background is drawn from the parties' pleadings and other filings and does not constitute a finding of fact for purposes of any other proceeding in this action.

¶¶ 56–71).² Mr. Naprstek claims that, after Marriott's 2012 purchase of the hotel at which he had worked as an "A-List banquet waiter" since 1991, Marriott "unilaterally began instituting sweeping changes" to the banquet staff rules, including those related to assignments, pay, and leave. (Id. ¶¶ 11, 16, 20). Marriott's rule changes included "a new 80% work and attendance policy which required all employees to work 80% of available work time" and provided that "failure to so work would be terminable offense and/or result in forfeiture and credit hours counted towards pension benefits" (the "80% Policy"). (Id. ¶ 21). Mr. Naprstek alleges that "[t]his policy adversely impacted older workers, including [himself], . . . who simply would not be physically able to work the exorbitant 80% of the available hours that their younger counterparts were better positioned, physically, to perform." (Id. ¶ 22). Mr. Naprstek also alleges that, since 2014 and in violation of the parties' collective bargaining agreement (the "CBA"), "Marriott has increased banquet service fees without also increasing banquet wait staff gratuities" (the "Service Charge Policy"). (Id. ¶ 36). According to Mr. Naprstek, "[b]etween 2015 and 2019, [he] vociferously protested" these rule changes and "has been subjected to retaliatory animus . . . because of his complaints concerning age discrimination, prior alienage national origin discrimination and a hostile work environment." (Id. ¶ 41).

In 2019, Marriott and the Union each initiated arbitration under the CBA seeking resolution of issues relating to the rule changes. (ECF Nos. 1 ¶ 26; 12-2; 22-1; 22-2). Marriott

---

² The Complaint also named as a defendant Mr. Naprstek's union, the Hotel and Gaming Trades Council, AFL-CIO (the "Union"), and included claims against Marriott and the Union for alleged violations of the Labor Management Relations Act, 29 U.S.C. § 185 (the "LMRA Claims"). (ECF No. 1 ¶¶ 72–74). On January 10, 2024, the Honorable Colleen McMahon granted the Union's motion under Federal Rule of Civil Procedure 12(c) for judgment on the pleadings (ECF No. 52 (the "MJP")) and dismissed the LMRA Claims "against both defendants . . . with prejudice and without leave to amend." (ECF No. 73 (the "MJP Decision") at 31).

2

sought, inter alia, a declaration of its rights to: (i) add two new members to its list of A-List Banquet Servers which, since at least 2012, was limited to twenty, and (ii) to implement the 80% Policy. (ECF No. 22-1 at 2). With respect to the first issue, in 2018, "a problem arose" for Marriott with respect to two A-List Servers—Gary Knifer ("Knifer") and Judith Hoover ("Hoover")—who had "continu[ed]to work a very few number of functions[,]" with Knifer working "less than six percent" and Ms. Hoover working "less than 9 percent of the total" available functions. (Id. at 3). By contrast, "the average of all of the [18]other A-List Servers in 2018 was 84.62[,] . . . a threshold that [Marriott] want[ed] to see maintained." (Id.) Rather than terminate Knifer and Hoover, however, Marriott sought in the arbitration a declaration "allow[ing] it to restore twenty full-time A-List Servers" by "mov[ing] up the most senior B-List Servers" while "red circling" Knifer and Hoover, i.e., "leav[ing] Knifer and Hoover on the A-List until they decide to stop working." (Id.) The Union argued that Marriott's request to add two new A-List Servers and its implementation of the 80% Policy were done "in retaliation for the Union members exercising their rights" relating to "their refusal to settle a dispute over" the Service Charge Policy. (Id. at 3–4).

On November 6, 2019, following a hearing, the Office of the Impartial Chairperson of the Hotel Industry (the "OICHI") granted Marriott's requested relief with respect to these issues. (ECF No. 22-1). The OICHI reasoned as follows:

> There is no contest that the Hotel's A-List should be twenty (20) at a minimum, and the Hotel could, under appropriate circumstances, increase that number in the future. The A-List is the Hotel's regular full-time staff and should work on such a basis in order to provide the best possible guest service. The limited work patterns of Mr. Knifer and Ms. Hoover do not provide the Hotel with that benefit. Accordingly, I direct that the Hotel "red-circle" Mr. Knifer and Ms. Hoover as they proposed, and, in accordance with IWA seniority principles, promote two servers from the B-List. . . .

3

> Similarly, I find that the Hotel's interest in establishing the aforedescribed 80% passing rule is done solely for its interest in promoting guest service. Further, the Banquet Servers position is the most lucrative, highly compensated job in the NYC hotel industry. It is not unreasonable for the Hotel to expect them to show up to work at least 80% of the time. In fact, it would be unreasonable to expect otherwise. Therefore, the Hotel may implement this 80% attendance rule.

(Id. at 7).

Separately, the Union sought a declaration that Marriott's Service Charge Policy violated the CBA. (ECF No. 22-2). The OICHI found that Marriott was allowed to increase its service charge but required Marriott to retroactively allocate a portion of that increase to the tipped banquet staff. (Id. at 5). Specifically, the OICHI required Marriott to "give the tipped banquet staff 16% of the 1% increase from 23% to 24% retroactive, in accordance with Impartial Chairperson precedent, two (2) years from the date the instant grievance was filed." (Id.)

On October 18, 2021, Mr. Naprstek filed the Complaint in this action (ECF No. 1), and, on June 21, 2023, Judge McMahon referred the case to the undersigned for general pre-pretrial supervision. (ECF No. 45).³ On July 5, 2023, the Court entered the parties' proposed case management plan, which provided that all discovery shall be completed by December 29, 2023. (ECF No. 50 at 2). On July 9, 2023, Mr. Naprstek served a set of forty (40) interrogatories (the "Interrogatories"), which Marriott responded to on November 6, 2023. (ECF Nos. 66-1; 66-3).

---

³ Mr. Naprstek was represented by counsel when he filed the Complaint. (ECF No. 1). On June 15, 2022, Mr. Naprstek's counsel moved to withdraw due to "irreconcilable conflicts" with Mr. Naprstek. (ECF No. 37; see ECF No. 36 (the "Withdrawal Motion")). On September 8, 2022, following a hearing, Judge McMahon granted the Withdrawal Motion. (ECF No. 40). Since December 6, 2022, Mr. Naprstek has proceeded pro se. (ECF No. 41).

4

On December 15, 2023, the Court extended the fact discovery deadline to February 27, 2024. (ECF No. 67). On February 7, 2024, the Court again extended the fact discovery deadline to March 29, 2024, and held in abeyance the deadline for completion of expert discovery, if any, pending completion of fact discovery. (ECF No. 76).

On March 12, 2024, the Court held a telephone status conference, at which Mr. Naprstek requested leave to the serve the Proposed Requests and to take Ms. Mui's deposition, as well as a commensurate extension of the fact discovery deadline. (ECF No. 88 at 5–8, 17–37). The Court directed Marriott to file the transcript (the "Transcript") of Mr. Naprstek's deposition of Marriott employee Veronica Stewart ("Ms. Stewart"), on whose testimony Mr. Naprstek relies in making the Deposition Request and which Mr. Naprstek sought to review in drafting the Proposed Requests. (ECF No. 80 ¶ 2; see ECF No. 88 at 5, 23–24). On March 20, 2024, Marriott filed the Transcript. (ECF No. 86; 86-1). On April 3, 2024, Mr. Naprstek filed the Proposed Requests. (ECF No. 91). On April 10, 2024, Marriott filed its opposition to the Proposed Requests. (ECF No. 92 (the "Opposition")).

### III.  LEGAL STANDARDS

Under the Federal Rules of Civil Procedure:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

Fed. R. Civ. P. 26(b)(1). "Although not unlimited, relevance, for purposes of discovery, is an extremely broad concept." Feltenstein v. City of New Rochelle, No. 14 Civ. 5434 (NSR), 2018 WL

3752874, at *3 (S.D.N.Y. Aug. 8, 2018).[4] "While Rule 26(b)(1) provides for broad discovery," however, "courts should not grant discovery requests based on pure speculation that amount to nothing more than a 'fishing expedition' into actions or past wrongdoing not related to the alleged claims or defenses." Id. The Court "must limit the frequency or extent of discovery otherwise allowed by" the Federal Rules of Civil Procedure "if it determines" that:

> (i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive;
>
> (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or
>
> (iii) the proposed discovery is outside the scope permitted by Rule 26(b)(1).

Fed. R. Civ. P. 26(b)(2)(C); see Amtrust N. Am., Inc. v. Preferred Contractors Ins. Co. Risk Retention Grp., LLC, No. 16 Misc. 340 (CM), 2016 WL 6208288, at *3 (S.D.N.Y. Oct. 18, 2016).

### IV.   APPLICATION

#### A.   The Proposed Requests

Having reviewed the Proposed Requests, the Court finds that the vast majority seek documents and information that are either not relevant to any party's claim or defense or are duplicative of Mr. Naprstek's prior discovery requests. For example, several requests seek documents relating to a 2016 lawsuit against Marriott in which another employee asserted claims for religious and national origin discrimination and retaliation following his reporting of "perceived wage theft by a few of his co-workers[.]" (Complaint, Rasmy v. Marriott Int'l Inc., 16 Civ. 4865 (JSR) (S.D.N.Y. June 22, 2016), ECF No. 1 at 8 ¶ 16). (See ECF No. 91 at 7–11, 21–23).

---

[4] Internal citations and quotation marks are omitted from case citations unless otherwise indicated.

Similarly, as Marriott correctly notes in its Opposition, many of the Proposed Requests "seek documents concerning other Marriott employees . . . about events that did not even involve [Mr. Naprstek] at all." (ECF No. 92 at 1 (citing ECF No. 91 at 8–10, 12–13, 16–18)). For example, Mr. Naprstek alleges that a "Marriott Manager . . . was supposedly racist against African American waiter Johnathan Thompson[,]" and he requests "the outcome of the full investigation of" this accusation. (ECF No. 91 at 8). (There are no race-based claims in Mr. Naprstek's Complaint. (See ECF No. 1)). Mr. Naprstek also premises two Proposed Requests on his belief that Marriott and the Union "provided some inaccurate and false information" to Judge McMahon in connection with the MJP Decision. (ECF No. 91 at 17–18). He claims that Judge McMahon asserted that "she 'knew' there were no sex crimes" committed at the Hotel, and he requests "all documents sent to the judge that led her to this statement[.]" (Id. at 17).[5] The Court finds that nearly all of the Proposed Requests seek documents and information that have no plausible bearing on Mr. Naprstek's claims of age and national origin based discrimination and retaliation claims and are thus improper. See Hong v. JP White Plains, Inc., No. 19 Civ. 5018 (NSR) (AEK), 2023 WL 5173785, at *3 (S.D.N.Y. July 31, 2023) (denying discovery requests "based solely on [the] Plaintiffs' speculation"); see also Fed. R. Civ. P. 26(b)(2)(C)(iii).

---

[5] Mr. Naprstek appears to be referencing Judge McMahon's observation that, in opposition to the MJP, Mr. Naprstek raised "for the first time . . . a substantial number of new allegations and legal theories," including that the "Union and/or Marriott engaged in modem-day slavery, committed sex crimes (apparently by spying on employees using some sort of camera), violated Title VII , stole gratuities, violated ERISA and engaged in bribery." (ECF No. 73 at 13–14). In deciding the MJP, Judge McMahon "ignore[d] the[se] new 'factual allegations' and theories that are not pleaded in the Complaint and that are wholly unrelated to any [duty of fair representation] claim that [Mr. Naprstek] has asserted or could assert" against the Union. (Id. at 16).

Marriott also opposes nineteen of the Proposed Requests because they "are in the form of interrogatories, many of which are duplicative of [Mr. Naprstek]'s Interrogatories served July 9, 2023 and to which Marriott already responded to on November 6, 2023 and produced various responsive documents on November 8, 2023 and December 22, 2023." (ECF No. 92 at 3–4; see ECF Nos. 66-1; 66-3). The Court agrees with Marriott that, in addition to their—at best—questionable relevance, these Proposed Requests are duplicative of the Interrogatories and seek information that Mr. Naprstek already "has had ample opportunity to obtain the information by discovery in the action[.]" Fed. R. Civ. P. 26(b)(2)(C)(ii).

The Court finds, however, that one of the Proposed Requests appears to seek relevant information that Mr. Naprstek has not previously sought or otherwise obtained from Marriott. Specifically, Mr. Naprstek requests "all emails, agreements, text messages, and names from the hotel and union employees including attorneys who agreed to the Award 2019-78, the 2 new A-list and 80% attendance policy of A-list except [] Hoover and [] Kniffen [sic] and who from Marriott Corporate Office approved the cost of the mediation and the arbitration of 2019." (ECF No. 91 at 13 ("Proposed Request 23")). The Court construes Proposed Request 23 to seek, inter alia, documents and communications relating to Marriott's decisions to implement the 80% Policy and to "red circle" Hoover and Knifer, who, according to Mr. Naprstek, are "American born" (ECF No. 91 at 21), rather than terminate them pursuant to the 80% Policy. Accordingly, the Court will require Marriott to conduct a reasonable search for and produce any such non-privileged documents and communications concerning only Proposed Request 23, as modified below.

8

### B. The Deposition Request

As noted above, Mr. Naprstek seeks to depose Ms. Mui, Marriott's Director of Finance and Accounting. Ms. Mui was responsible for calculating the retroactive portion of the banquet service charge that the OICHI required Marriott to pay to its tipped banquet staff. (ECF No. 88 at 5). According to Mr. Naprstek, Ms. Mui's calculations were "in huge favor of the hotel[,]" and he seeks to question her regarding those calculations. (Id.)

Having reviewed the Transcript, the Court finds that the Deposition Request is improper because it seeks discovery that "is outside the scope permitted by Rule 26(b)(1)," i.e., that is not "relevant to any party's claim or defense and proportional to the needs of the case[.]" Fed. R. Civ. P. 26(b)(2)(C)(iii). The Transcript reflects Ms. Stewart's testimony that, to perform the calculations, Ms. Mui "just took the numbers and calculated it because she needed to calculate retroactively how much was owed to the banquet servers so [Marriott] could process that for the payroll." (ECF No. 86-1 at 11). Mr. Naprstek has failed to establish any basis to suggest that Ms. Mui will be likely to offer further testimony on any issue that is relevant to his discrimination or retaliation claims.

### V. CONCLUSION

For the reasons set forth above, Mr. Naprstek's request for leave to serve the Proposed Requests is GRANTED IN PART and DENIED IN PART, the Deposition Request is DENIED, and the Court orders as follows:

1. Marriott shall promptly conduct a reasonable search for documents and communications relating to Marriott's decisions to implement the 80% Policy and to "red circle" Hoover and Knifer ("Modified Request 23").

9

2. By **May 9, 2024**, Marriott shall produce any non-privileged documents and communications in response to Modified Request 23.

3. The fact discovery deadline is extended to **May 9, 2024**.

4. A telephone conference is scheduled for **Monday, May 13, 2024 at 11:00 a.m.** on the Court's conference line.  The parties are directed to call: (866) 390-1828; access code: 380-9799, at the scheduled time.

Marriott shall promptly serve a copy of this Order on Mr. Naprstek, and file proof of service by **April 26, 2024**.

The Clerk of Court is respectfully directed to mail a copy of this Order to Mr. Naprstek.

Dated:    New York, New York
          April 25, 2024

SO ORDERED.

*Sarah Cave*
**SARAH L. CAVE**
**United States Magistrate Judge**