UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

LUBOS NAPRSTEK,

                              Plaintiff,

        -v-

MARRIOTT INTERNATIONAL, INC., <u>et</u> <u>al.</u>,

                              Defendants.

CIVIL ACTION NO. 21 Civ. 8560 (CM) (SLC)

**<u>OPINION & ORDER</u>**

**SARAH L. CAVE,** United States Magistrate Judge.

## I. <u>INTRODUCTION</u>

Plaintiff Lubos Naprstek has grievances with his employer, Marriott International, Inc. ("Marriott"); his union, the Hotel, Gaming, Restaurant and Club Employees and Bartenders Union Local 6 AFL-CIO (the "Union"); and at least one of his co-workers, Stamatis Efstratiou ("Stamatis"). The Honorable Colleen McMahon previously granted the Union's motion for judgment on the pleadings, dismissing all claims against the Union and denying leave to amend because Naprstek "cannot possibly state any [duty of fair representation] claim against the Union for failing to take an appeal from [an] adverse arbitration award or on the basis of Stamatis' alleged concealment of that decision." <u>Naprstek v. Marriott Int'l</u>, No. 21 Civ. 8560 (CM), 2024 WL 113804, at *15 (S.D.N.Y. Jan. 10, 2024) ("<u>Naprstek I</u>").[1]

After fact discovery closed on Naprstek's claims against Marriott, Naprstek moved for leave to file an amended complaint to add new claims against Marriott, bring the Union back in

---

[1] Internal citations and quotation marks are omitted from case citations unless otherwise indicated.

as a defendant, and add Stamatis as a defendant (the "Motion" (ECF No. 97)).  The Motion is DENIED.[2]

## II.  BACKGROUND

The Court assumes familiarity with, and incorporates by reference, the factual and procedural background of this action set forth in Judge McMahon's decision in <u>Naprstek I</u>, <u>see</u> 2024 WL 113804, at *1–2, but sets forth those additional facts necessary to decide the Motion.

### A.  Original Complaint

In his original Complaint, Naprstek, who has been and continues to be employed as an "A-list Banquet Server" at the Marriott-owned Essex House since 1991, alleged that Marriott breached a city-wide collective bargaining agreement with the Union (the "CBA") by instituting new policies that required all employees to work 80% of their available work time (the "80% Policy") and also narrowed the window within which employees could request time off (the "Time Off Policy").  (ECF No. 1 ¶¶ 11, 13–16, 21–25).  <u>See</u> <u>Naprstek I</u>, 2024 WL 113804, at *2–3. After a hearing before the Office of the Impartial Chairperson of the Hotel Industry (the "OICHI"), during which the 80% Policy and the Time Off Policy were raised, Marriott was (i) ordered to pay out one-half of each A-list banquet server's vacation balance, (ii) permitted to increase its service charge—a portion of which it had to reallocate retroactively to the tipped banquet staff—and

---

[2] "A motion to amend is not a dispositive motion."  <u>Media Glow Digital, LLC v. Panasonic Corp. of N. Am.</u>, No. 16 Civ. 7907 (PGG), 2020 WL 3483632, at *3 (S.D.N.Y. June 26, 2020) (collecting cases); <u>see</u> <u>Fielding v. Tollaksen</u>, 510 F.3d 175, 178 (2d Cir. 2007) (explaining that a motion to amend is non-dispositive).  "A motion for joinder is also non-dispositive."  <u>Lee v. HDR Global Trading Ltd.</u>, No. 20 Civ. 3232 (ALC) (SDA), 2024 WL 4381009, at *1 n.2 (S.D.N.Y. Oct. 3, 2024) (citing <u>Hatemi v. M&T Bank Corp.</u>, No. 13 Civ. 1103S (HBS), 2015 WL 13549199, at *1 (W.D.N.Y. Mar. 5, 2015) (collecting cases)).  The undersigned therefore has the authority to decide the Motion by this Opinion and Order.  <u>See</u> <u>Lee</u>, 2024 WL 4381009, at *1 (denying motion to amend by opinion and order).

(iii) allowed to "red-circle" two A-List Banquet Servers, promote two servers to the A-List, and implement the 80% Policy. Id. at *3–4. Naprstek contends that the Union's failure to appeal the OIHCI's rulings was the product of collusion with Marriott and Stamatis, a Union delegate with "outsized power" and "a history of concealing facts [from] other banquet staff." (ECF No. 1 ¶¶ 26–31).

Naprstek continued to complain about Marriott's 80% Policy and Time Off Policy, so— according to Naprstek—Stamatis and others subjected him to retaliation and a hostile work environment based on his age and national origin; for example, calling him "a Czech communist" who did not understand "how things work in America[.]" (ECF No. 1 ¶¶ 41–55). Naprstek asserted against Marriott claims for age and national origin discrimination and retaliation under Section 1981[3] and the New York State and New York City Human Rights Laws ("NYSHRL" and "NYCHRL," respectively),[4] and, against both the Union and Marriott, a claim for breach of the duty of fair representation ("DFR") under Section 301 of the Labor Management Relations Act, 29 U.S.C. § 185 (the "LMRA"). (ECF No. 1 ¶¶ 56–74).

B. **Naprstek I**

The Union moved for judgment on the pleadings under Federal Rule of Civil Procedure 12(c), arguing that Naprstek failed to state a plausible DFR claim because he did not allege facts showing that the Union engaged in arbitrary, discriminatory, or bad-faith conduct. Naprstek I, 2024 WL 113804, at *6. Judge McMahon first concluded that Naprstek failed to plead facts supporting an inference that the Union's failure to appeal the OICHI rulings was arbitrary,

---

[3] 42 U.S.C. § 1981.
[4] N.Y. Hum. Rts. L. § 296; N.Y.C. Admin. Code § 8-107(1)(a)(3).

discriminatory, or in bad faith, or "so far outside the wide range of reasonableness as to be irrational." Id. at *10–11. Second, Judge McMahon concluded that because Stamatis was a delegate, not a Union leader, his actions were not attributable to the Union and, therefore, any failure by Stamatis to communicate to members that the Union was not appealing the OICHI's rulings did not give rise to a claim against the Union. Id. at *12–13. In any event, Stamatis' alleged misrepresentation about whether the Union would appeal did not "undermine[] the arbitral process." Id. at *13. Third, Judge McMahon concluded that Naprstek's allegation that his union delegate knew the Union was not going to appeal the OICHI rulings undermined his claim that the Union and Stamatis concealed the decision not to appeal, and the Union otherwise did not owe Naprstek an affirmative duty to notify members that it was not going to appeal. Id. at *14. Because Naprstek failed to satisfy "the threshold showing that the Union breached" the DFR, Judge McMahon also dismissed the LMRA against Marriott for alleged breach of the CBA. Id.

To the extent that Naprstek, in his opposition to the Union's motion, contended that the Union and Marriott "engaged in modern-day slavery, committed sex crimes (apparently by spying on employees using some sort of camera), violated Title VII, stole gratuities, violated ERISA and engaged in bribery," Judge McMahon concluded these assertions improperly raised in opposition to the Union's motion, "patently deficient[,]" and insufficient to state a hybrid § 301 claim against the Union because Naprstek still failed to allege "a single fact [] tending to show that the Union was aware of any of [these] novel defalcations . . . or that it had any obligation to deal with any of these matters but failed to do so." Id. at *7–8. In short, "[n]one of these new allegations impacts the duty of fair representation." Id. at *8.

Finally, although Naprstek had not requested leave to amend, Judge McMahon denied such leave as futile because he could not "possibly state any DFR claim against the Union for failing to take an appeal from the adverse arbitration award or on the basis of Stamatis' alleged concealment of that decision." Id. at *15. Accordingly, Judge McMahon dismissed the LMRA claim against the Union "with prejudice and without leave to amend." Id.[5]

### C.  Amended Complaint

Pursuant to the case management plan entered in this action (the "CMP"), all discovery— other than the Union's deposition, which was stayed pending resolution of its motion—was to be completed by December 29, 2023. (ECF No. 50). The CMP did not set a deadline for amendment of pleadings. (Id.) The discovery deadline was subsequently extended three times. (ECF Nos. 67 (to Feb. 7, 2024); 76 (to Mar. 29, 2024); 93 (to May 9, 2024)). During discovery, the Court held five conferences during which it resolved several discovery issues Naprstek raised. (ECF min. entries Nov. 9, 2023; Dec. 15, 2023; Feb. 7, 2024; Mar. 12, 2024; May 13, 2024). Based on the parties' representations during the last conference on May 13, 2024, the Court deemed discovery as to the claims and defenses in the Complaint closed and granted Naprstek's request to file the Motion. (ECF No. 95). On June 27, 2024, Naprstek filed the Motion with the Amended Complaint. (ECF No. 97).

In the Amended Complaint, Naprstek adds allegations concerning: (i) Marriott's conduct during discovery in this action (ECF No. 97 at 12 ¶¶ 59–60, 64–67; id. at 13 ¶ 69); (ii) his inability

---

[5] Judge McMahon also noted that it appeared that "portions of the opposition papers submitted on [Naprstek's] behalf were prepared by someone with legal training[,]" and warned him not to "pass off 'hybrid' papers as his own again" or he would face being placed under oath and having his filings stricken. 2024 WL 113804, at *6. From this Court's review of the Motion and the reply, Naprstek appears to have heeded this warning, for now.

to obtain discovery from the Union (id. at 12 ¶ 61); (iii) the Union's refusal to engage in settlement negotiations (id. at 12 ¶¶ 62–63); (iv) his prior attorney's representation (id. at 13 ¶¶ 71–73); (v) Stamatis' efforts to undermine Naprstek and other employees (id. at 16–17 ¶¶ 79–80, 83, 86–87); (vi) the arbitrator's bias (id. at 18 ¶¶ 89–92); and, (vii) "violations of human rights including sex crimes and modern day slavery with deadly consequences" in connection with video surveillance cameras. (Id. at 15 ¶ 84; 19 ¶ 95). The Amended Complaint reasserts age discrimination, retaliation, and LMRA claims against Marriott based on the Banquet Policy, the 80% Policy, and the actions of Stamatis and other employees at the Essex House (together, the "Original Claims"). (ECF No. 97 at 6–11 ¶¶ 23–58; id. at 20–29 ¶¶ 1–8; 24 ¶¶ 11–13).[6] Naprstek also adds claims against Marriott for fraud, defamation, hostile work environment, "civil theft/conversion," unjust enrichment, negligence, negligent infliction of emotional distress, and respondeat superior (together, the "New Claims"). (ECF No. 97 at 22–29 ¶¶ 14–63). In addition, despite Judge McMahon's dismissal of his claims against the Union with prejudice and without leave to amend, Naprstek reasserts the Original Claims, including the claim under the LMRA, against the Union, as well as the New Claims. (Id. at 20–29 ¶¶ 1–63). Naprstek also seeks to add Stamatis as a defendant, asserting against him some of the Original Claims (age discrimination and retaliation) and some of the New Claims (fraud, defamation, hostile work environment, and negligent infliction of emotional distress). (Id.)

On July 29, 2024, Marriott filed its opposition to the Motion, arguing that the New Claims are futile and that Naprstek should not be permitted to reassert claims against the Union or add

---

[6] The paragraph numbering restarts at paragraph one on page 20 of the Amended Complaint, so the Court cites both the page and paragraph number in the Complaint. (ECF No. 97 at 20).

Stamatis as a defendant.  (ECF Nos. 97; 97-1; 98).  On August 12, 2024, Naprstek filed a reply, to

which he attached at-times heated correspondence among Marriott employees and the

deposition transcript of Marriott employee Veronica Stewart.  (ECF No. 100).  On August 14,

2024, Stamatis, who is also pro se, filed a template "answer[,]" which the Court construes as an

opposition to the Motion because Stamatis has not yet been added as a defendant.  (ECF

No. 101).  With the Court's permission, Marriott filed a sur-reply.  (ECF Nos. 104; 105).  Judge

McMahon referred the Motion.  (ECF No. 106).

### III.  DISCUSSION

#### A.  Legal Standards

##### 1.    Federal Rule of Civil Procedure 15(a)(2)[7]

Federal Rule of Civil Procedure 15(a)(2) provides that a court "should freely give leave" to

amend a pleading "when justice so requires."  Fed. R. Civ. P. 15(a)(2).  The Rule encourages courts

to determine claims "on the merits" rather than disposing of claims or defenses based on "mere

technicalities."  Monahan v. N.Y.C. Dep't of Corr., 214 F.3d 275, 283 (2d Cir. 2000).  The Second

Circuit has explained that "district courts should not deny leave [to amend] unless there is a

substantial reason to do so, such as excessive delay, prejudice to the opposing party, or futility."

Friedl v. City of New York, 210 F.3d 79, 87 (2d Cir. 2000).  Courts in this District have held that

denial of a motion to amend is appropriate where "(1) the movant is guilty of undue delay, (2) the

---

[7] Because the CMP did not set a deadline for amendment of pleadings, the more liberal standard in
Rule 15(a)(2), rather than the "good cause" standard in Federal Rule of Civil Procedure 16(b), applies.  See
Sacerdote v. N.Y. Univ., 9 F.4th 95, 115 (2d Cir. 2021), cert. denied, 142 S. Ct. 1112 (2022) (explaining that
"[t]he period of liberal amendment [under Rule 15(a)(2)] ends if the district court issues a scheduling order
setting a date after which no amendment will be permitted"); Cherotti v. Exphand, Inc., No. 20 Civ. 11102
(SLC), 2022 WL 2108604, at *6 (S.D.N.Y. June 10, 2022) (applying Rule 15(a)(2) standard where case
management plan did not set a "date after which all amendments were prohibited").

movant has acted in bad faith, (3) the amendment would be futile, or (4) the amendment would prejudice the opposing party." Procter & Gamble Co. v. Hello Prods., LLC, No. 14 Civ. 649 (VM) (RLE), 2015 WL 2408523, at *1 (S.D.N.Y. May 20, 2015) (citing State Tchrs. Ret. Bd. v. Fluor Corp., 654 F.2d 843, 856 (2d Cir. 1981)); see Williams v. Citigroup Inc., 659 F.3d 208, 213–14 (2d Cir. 2011) (per curiam) (reiterating Supreme Court precedent explaining proper grounds for denying motion to amend as "undue delay, bad faith or dilatory motive on the part of the movant, . . . undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of amendment").

While a party may move to amend under Rule 15(a)(2) at any stage of litigation, when "a proposed amendment is based on 'information that the party knew or should have known prior to the deadline [to file an amendment], leave to amend is properly denied.'" Hyo Jung v. Chorus Music Studio, Inc., No. 13 Civ. 1494 (CM) (RLE), 2014 WL 4493795, at *2 (S.D.N.Y. Sept. 11, 2014) (citing Soroof Trading Dev. Co. v. GE Microgen, Inc., 283 F.R.D. 142, 147 (S.D.N.Y. 2012)); see Procter & Gamble Co., 2015 WL 2408523, at *2–3 (finding undue delay and prejudice where party was aware of information well before deadline to amend pleadings but waited ten months to move to amend).

Prejudice occurs when an amendment would "(i) require the opponent to expend significant additional resources to conduct discovery and prepare for trial; (ii) significantly delay the resolution of the dispute; or (iii) prevent the plaintiff from bringing a timely action in another jurisdiction." Soroof Trading, 283 F.R.D. at 147 (citing Block v. First Blood Assocs., 988 F.2d 344, 350 (2d Cir. 1993)). An amendment is futile if it would not survive dismissal under Rule 12(b)(6) for want of "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible

on its face.'" <u>Brodt v. City of New York</u>, 4 F. Supp. 3d 562, 567 (S.D.N.Y. 2014) (quoting <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009)).  Facial plausibility exists when the plaintiff pleads "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." <u>Id.</u>

### 2.    Federal Rule of Civil Procedure 21

Federal Rule of Civil Procedure 21 governs joinder of parties, authorizing the court to "at any time, on just terms, add or drop a party."  Fed. R. Civ. P. 21.  "The same liberal standard for amending pleadings under Rule 15(a) applies to the joinder of parties under Rule 21," but "is subject to the 'good cause' requirement of Rule 16([b]) if the time to join additional parties has expired." <u>Kleeberg v. Eber</u>, 331 F.R.D. 302, 315 (S.D.N.Y. 2019).  "In exercising its discretion under Rule 21, the court must consider principles of fundamental fairness and judicial efficiency[,]" considering "whether an order under Rule 21 would prejudice any party, or would result in undue delay." <u>In re Merrill Lynch & Co. Res. Repts. Sec. Litig.</u>, 214 F.R.D. 152, 155 (S.D.N.Y. 2003).

### B.    Application

As summarized above, Naprstek's Amended Complaint seeks to: (i) add the New Claims and reassert the LMRA Claim against Marriott; (ii) bring the Union back in as a defendant; and (iii) add Stamatis as a defendant.  (ECF No. 97)  After careful review of Naprstek's filings and <u>Naprstek I</u>, the Motion is denied.

### 1.    Claims Against Marriott

#### a.    LMRA

In the Amended Complaint, Naprstek reasserts the LMRA claim against Marriott.  (ECF No. 97 at 21 ("Ninth Cause of Action – Labor Relations Management Act – Marriott and The

Union")).  In Naprstek I, however, Judge McMahon concluded that because Naprstek "is unable to make the threshold showing that the Union breached [the DFR]," his "LMRA claim against Marriott for its alleged breach of the [CBA] must also be dismissed[,]" so she dismissed the LMRA claim against Marriott "with prejudice and without leave to amend."  2024 WL 113804, at *14–15.  Because the LMRA claim against Marriott was dismissed with prejudice and without leave to amend, Naprstek's attempt to reassert that claim in the Amended Complaint is futile.  See Trombetta v. Novocin, No. 18 Civ. 993 (RA) (SLC), 2020 WL 1304120, at *3 (S.D.N.Y. Mar. 19, 2020) (denying pro se motion to amend that sought to reassert claims that had been dismissed with prejudice and without leave to amend).  To the extent that the Motion seeks to reassert the LMRA claim against Marriott, the Motion is denied and the LMRA claim is stricken from the Amended Complaint.  See id. (striking from amended complaint claims that had been previously dismissed with prejudice and without leave to amend).

### b.  Fraud

In support of a fraud claim, Naprstek quotes from a New York case setting forth the elements of a fraud claim and alleges that: (i) the Union sent out, but failed to provide him or Marriott with a copy of, a request for information regarding the treatment of Banquet Servers during a July 13, 2019 wedding at the Essex House; and (ii) Marriott's statement that certain cameras at the Essex House "were down when they were not[.]"  (ECF No. 97 at 22 ¶¶ 16–20; see ECF No. 98 at 12).  Only the latter alleges any conduct by Marriott, and the Court interprets the allegation to be that Marriott made fraudulent statements regarding surveillance cameras at the Essex House.

### i. __Legal Standard__

"Under New York law, the elements of a common-law fraud claim are (1) a material misrepresentation or omission of fact; (2) made by defendant with knowledge of its falsity; (3) intent to defraud; (4) reasonable reliance on the part of the plaintiff; and (5) resulting damage to the plaintiff." Romain v. Webster Bank N.A., No. 23 Civ. 5956 (NRM) (JMW), 2024 WL 3303057, at *4 (E.D.N.Y. July 2, 2024); see Crigger v. Fahnestock & Co., 443 F.3d 230, 234 (2d Cir. 2006) (setting forth five elements).  Fraud claims must meet the heightened pleading standard in Federal Rule of Civil Procedure 9(b), which requires a plaintiff to "(1) specify the statements that the plaintiff contends were fraudulent[;] (2) identify the speaker[;] (3) state where and when the statements were made[;] and (4) explain why the statements were fraudulent." Rombach v. Chang, 355 F.3d 164, 170 (2d Cir. 2004).

### ii. __Application__

Naprstek's allegation that Marriott "claimed cameras were down when they were not" fails to state a plausible fraud claim.  (ECF No. 97 at 22 ¶ 19).  The Amended Complaint lacks particularized facts that could support a plausible claim that Marriott made material false representations to or intended to defraud Naprstek, or that he suffered a specific damage as a result.  See Williams v. Ocwen Loan Serv'g, No. 19 Civ. 2187 (KAM) (LB), 2020 WL 5757640, at *6 (E.D.N.Y. Sept. 27, 2020) (denying pro se plaintiff's motion for leave to amend to add fraud claim). Furthermore, Naprstek's conclusory allegations fail to satisfy his burden under Rule 9(b) to plead with sufficient particularity when Marriott told Naprstek that any cameras "were down" and why that statement was fraudulent.  See Ocampo v. JP Morgan Chase Bank, N.A., 93 F. Supp. 3d 109, 119 (E.D.N.Y. 2015) (holding that plaintiffs' conclusory allegations that documents were forgeries

failed to plead a fraud claim with particularity Rule 9(b) requires); <u>Generale Bank, N.Y. Branch v.</u>

<u>Wassel</u>, No. 91 Civ. 1768 (LAP), 1993 WL 106051, at *3 (S.D.N.Y. Apr. 8, 1993) (denying leave to

amend fraud counterclaim that was "not pleaded with specificity as required by Rule 9").

The Motion, to the extent that it seeks to add a fraud claim, is denied as futile.

### c.  Defamation

In support of a defamation claim, Naprstek alleges that Stamatis and other Union

representatives stated that Naprstek was "trying to rob the union members and [] wouldn't get

anything[,]" and that Naprstek threatened to "sue" anyone who said "anything negative[,]" in an

attempt to "isolate" him and cast him as "a trouble maker[.]"  (ECF No. 97 at 22–23 ¶¶ 22–25).

The Court interprets the allegations to say that Stamatis and other Marriott employees defamed

Naprstek by claiming that he was threatening and trying to take money from other Union

members.  (<u>See</u> ECF No. 98 at 13).

### i.  Legal Standard

Defamation arises from "the making of a false statement which tends to expose the

plaintiff to public contempt, ridicule, aversion or disgrace, or induce an evil opinion of him in the

minds of right-thinking persons, and to deprive him of their friendly intercourse in society."

<u>Foster v. Churchill</u>, 87 N.Y.2d 744, 751 (1996).  The elements of a defamation claim under New

York law are: "[1] a false statement, [2] published without privilege or authorization to a third

party, [3] constituting fault as judged by, at a minimum, a negligence standard, and [4] it must

either cause special harm or constitute defamation per se."  <u>Petrone v. Turner Publ. Co.</u>, No. 22

Civ. 2698 (AS), 2023 WL 7302447, at *3 (S.D.N.Y. Nov. 6, 2023) (quoting <u>Dillon v. City of N.Y.</u>, 261

A.D.2d 34, 38 (1st Dep't 1999)).  In addition, "a defamation plaintiff must allege that the

purportedly defamatory statement was 'of and concerning' him [], i.e., that [t]he reading public acquainted with the parties and the subject would recognize the plaintiff as a person to whom the statement refers." Elias v. Rolling Stone LLC, 872 F.3d 97, 104–105 (2d Cir. 2017) (quoting Carlucci v. Poughkeepsie Newspapers, Inc., 57 N.Y.2d 883, 885 (1982)).

As to the fourth element, as a "general rule," a statement that "'tends to disparage a person in the way of his office, profession or trade' is defamatory per se and does not require proof of special damages." Celle v. Filipino Reporter Enters. Inc., 209 F.3d 163, 179 (2d Cir. 2000) (quoting Davis v. Ross, 754 F.2d 80, 83 (2d Cir. 1985)). Statements that are defamation per se are actionable without "pleading and proof of special damages." Davis, 754 F.2d at 82. Where the statements are not defamation per se, a plaintiff must plead and prove special damages, i.e., "the loss of something having economic or pecuniary value which must flow directly from the injury to reputation caused by the defamation[.]" Matherson v. Marchello, 100 A.D.2d 233, 235 (2d Dep't 1984), abrogated on other grounds by Laguerre v. Maurice, 192 A.D.3d 44 (2d Dep't 2020).

In evaluating whether a plaintiff has adequately pleaded a defamation claim, a court must construe the words "in the context of the entire statement or publication as a whole, tested against the understanding of the average reader, and if not reasonably susceptible of a defamatory meaning, they are not actionable and cannot be made so by a strained or artificial construction[.]" Dillon, 261 A.D.2d at 38. "Loose, figurative or hyperbolic statements, even if deprecating the plaintiff, are not actionable[.]" Id. The truth is "a complete defense to defamation claims[,]" and "[a]llegations of defamation present, in the first instance, an issue of law for judicial determination[.]" Id. at 39. A threshold question for a court evaluating the

sufficiency of a defamation claim is whether, drawing all reasonable inferences in favor of the plaintiff, "the comments contain assertions of fact or opinion."  Couloute v. Ryncarz, No. 11 Civ. 5986 (HB), 2012 WL 541089, at *5 (S.D.N.Y. Feb. 17, 2012).  Under New York law, courts must consider three factors in determining whether a statement is fact or opinion:

> (1) whether the specific language in issue has a precise meaning which is readily understood; (2) whether the statements are capable of being proven true or false; and (3) whether either the full context of the communication in which the statement appears or the broader social context and surrounding circumstances are such as to signal [to] readers or listeners that what is being read or heard is likely to be opinion, not fact.

Brian v. Richardson, 87 N.Y.2d 46, 51 (1995); see Flamm v. Am. Ass'n of Univ. Women, 201 F.3d 144, 153 (2d Cir. 2000) (same).

### ii.    **Application**

Marriott argues that Naprstek failed to plead a defamation claim because "the statements he identifies are nonactionable, hyperbolic expressions of opinion[]" that "are incapable of being proven true or false, and thus cannot suffice to support a defamation claim."  (ECF No. 98 at 13). Naprstek responds that he can prove falsity by showing that "the fees paid come out of the pension" and by looking at case docket sheets.  (ECF No. 100 at 3).

Marriott is correct that Stamatis' alleged statements that Naprstek was threatening or trying to rob other employees are clearly hyperbolic statements of opinion.  Whether Naprstek's workplace conduct was threatening to other employees is a subjective determination that cannot support a defamation claim.  See Udechukwu v. City of N.Y., 333 F. Supp. 3d 161, 172 (E.D.N.Y. 2018) (holding that "subjective statement of [a] fear of a threat to [] safety cannot be the basis of a defamation claim").  In addition, when viewed within the wider context of a workplace in which employees appear to have had contentious disputes about Marriott's policies and Union

activity (see, e.g., ECF No. 100 at 12–25), "there can be no doubt that a reasonable [listener] would understand the comments to be opinion." Couloute, 2012 WL 541089, at *6 (granting motion to dismiss defamation claims based on statements that plaintiff "lied and cheated" and "cover[ed] it up"); see SuperCom, Ltd. v. Sabby Volatility Warrant Master Fund Ltd., No. 21 Civ. 2857 (AT), 2022 WL 493600, at *3 (S.D.N.Y. Feb. 17, 2022) (dismissing defamation claim where "any reasonable reader would understand that [defendant's employee] was employing subjective epithets to characterize [plaintiff's] conduct out of frustration, rather than making factual statements").

Marriott also argues that Naprstek failed to allege any special damages, particularly given the fact that he "remains employed" at the Essex House.  (ECF No. 98 at 13–14).  Naprstek counters that his "special damages" include a hostile work environment, "alienating" him from co-workers, "and causing potential harm to [him] while at work[.]"  (ECF No. 100 at 4).  These assertions, however, fail to plead special damages, which "must be fully and accurately identified with sufficient particularity to identify actual losses." Matherson, 100 A.D.2d at 235.  Naprstek admits that he remains employed at Essex House as an A-list Banquet Waiter (ECF No. 97 at 5 ¶ 12), and "identifies neither an actual loss of income" nor any other pecuniary loss "with the requisite degree of specificity to sustain [his] defamation claim." Lue v. JPMorgan Chase & Co., No. 19 Civ. 9784 (KPF), 2021 WL 1108558, at *6 (S.D.N.Y. Mar. 23, 2021); see Agnant v. Shakur, 30 F. Supp. 2d 420, 426 (S.D.N.Y. 1998) (holding that "general allegation" of inability to find employment and damage to reputation did "not satisfy the requirement [to] plead[] special damages").

Finally, Naprstek failed to allege defamation per se because Stamatis' alleged statements did not "target[] specific standards of performance relevant to" Naprstek's performance as an A-List Banquet Server or "impute conduct that is of a kind incompatible with the proper conduct of the business, trade, profession, or office itself." Pure Power Boot Camp, Inc. v. Warrior Fitness Boot Camp, LLC, 813 F. Supp. 2d 489, 550 (S.D.N.Y. 2011).   Naprstek undoubtedly spoke passionately to his co-workers about his frustrations with Marriott's policies and the Union's decisions, but even if Stamatis or other Marriott employees expressed a "general dissatisfaction with [his] job performance," that does "not qualify as defamation per se." Accurate Grading Quality Assurance, Inc. v. Khothari, No. 12 Civ. 9130 (LTS), 2014 WL 5073576, at *14 (S.D.N.Y. Sept. 30, 2014); see Lue, 2021 WL 1108558, at *7 (finding that statements about plaintiff's workplace communication style did not plead defamation per se).

The Motion, to the extent that it seeks to assert a defamation claim, is denied as futile.

### d.  Hostile Work Environment

In support of a hostile work environment claim, the Amended Complaint reiterates Naprstek's allegations about "bullying tactics" and "false accusations" by Stamatis and other co-workers "based upon his alienage and national origin," (ECF No. 97 at 10 ¶¶ 46, 48; 11 ¶ 54), but simultaneously withdraws Naprstek's prior claims for national origin and "alienage" discrimination.  (ECF No. 99-1 at 23–24 (redline reflecting amendments)).  Marriott argues that because Naprstek has withdrawn any national origin or alienage discrimination claims, his request to add a hostile work environment claim "is thus either duplicative or a relabeled version of his existing allegations such that amendment is not only futile but unnecessary."  (ECF No. 98 at 14).  Marriott adds that Naprstek does not allege that any of his co-workers' statements "were

made 'because of' his national origin or membership in any protected class," and that any references to his Czech origin—which he previously alleged in the Complaint (<u>compare</u> ECF No. 1 ¶ 46 <u>with</u> ECF No. 97 at 10 ¶ 49)—are not actionable. (ECF No. 98 at 15).

Naprstek does not indicate the nature of his hostile work environment claim but continues to aver that Stamatis and other co-workers harassed him based on his national origin. (ECF Nos. 1 ¶¶ 46–47; 97 ¶¶ 49–50). The Court liberally construes his filings to analyze his allegations under applicable causes of action: Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e <u>et seq.</u> (1987 & Supp. 1996) ("Title VII"); Section 1981; the NYSHRL; and the NYCHRL.

### i.  <u>Title VII</u>

To pursue claims under Title VII, a plaintiff must first file a discrimination charge with the EEOC, or a state or local agency capable of granting relief from discriminatory practices, within 300 days of the alleged discriminatory action. <u>See</u> 42 U.S.C. §§ 2000e-5(e)(1), 12117(a); 29 U.S.C. §§ 626(d)(1)(B), 633(b); <u>see also</u> <u>Espinosa v. Weill Cornell Med. Coll.</u>, No. 18 Civ. 11665 (AT), 2021 WL 1062592, at *3 (S.D.N.Y. Mar. 19, 2021); <u>Rosen v. N.Y.C. Dep't of Educ.</u>, No. 18 Civ. 6670 (AT), 2019 WL 4039958, at *3 (S.D.N.Y. Aug. 27, 2019). "[A] plaintiff must [then] file an action in federal court within 90 days of receipt of a right-to-sue letter from the EEOC." <u>Henriquez-Ford v. Council of Sch. Sup'rs & Adm'rs</u>, No. 14 Civ. 2496 (JPO), 2015 WL 3867565, at *5 (S.D.N.Y. June 23, 2015) (citing 42 U.S.C. § 2000e-5(f)(1)); <u>see</u> 29 U.S.C. § 626(e).

Neither the Complaint nor the Amended Complaint contain any allegations that Naprstek exhausted his administrative remedies with respect to the alleged hostile work environment. The exhaustion requirement applies to <u>pro se</u> and counseled plaintiffs alike. <u>See</u> <u>Green v. N.Y.C. Transit Auth.</u>, No. 15 Civ. 8204 (ALC), 2020 WL 5632743, at *6 (S.D.N.Y. Sept. 21, 2020) (noting

that exhaustion requirement "applies with equal force to <u>pro se</u> plaintiffs"). Naprstek's failure to allege that he fulfilled the requirement of filing an administrative charge "either with the EEOC within 180 days, or with a state or local agency[] within 300 days, of the alleged unlawful employment practice[,]" <u>Felder v. Madison Sq. Garden</u>, No. 15 Civ. 4038 (GBD) (DF), 2017 WL 9538169, at *7 (S.D.N.Y. Jan. 25, 2017), <u>adopted by</u>, 2017 WL 1011493 (S.D.N.Y. Mar. 15, 2017), is fatal to any Title VII hostile work environment claim. <u>See</u> <u>Bromfield v. Bronx Lebanon Spec. Care Ctr., Inc.</u>, No. 16 Civ. 10047 (ALC) (SLC), 2022 WL 19406559, at *11 (S.D.N.Y. Dec. 8, 2022), <u>adopted by</u>, 2023 WL 2706989 (S.D.N.Y. Mar. 30, 2023) (denying leave to amend as to unexhausted Title VII hostile work environment claim).

### ii.    <u>Section 1981, the NYSHRL, and the NYCHRL</u>

Employment discrimination claims under Section 1981, the NYSHRL, and the NYCHRL "are all properly analyzed together and under the same framework." <u>Taylor v. Dollar Tree Stores</u>, No. 18 Civ. 1306 (SJB), 2020 WL 2478663, at *9 (E.D.N.Y. May 13, 2020) (collecting cases). In an employment case alleging national origin discrimination, a plaintiff must first establish "a <u>prima facie</u> case of discrimination" by demonstrating four elements: "(1) that he or she is a member of a protected class, (2) that he or she was qualified for the position in question, (3) that he or she suffered an adverse employment action, and (4) that the adverse employment action occurred under circumstances giving rise to an inference of discrimination." <u>Olle v. Columbia Univ.</u>, 332 F. Supp. 2d 599, 609 (S.D.N.Y. 2004), <u>aff'd</u>, 136 F. App'x 383 (2d Cir. 2005).

To establish a hostile work environment claim under Section 1981, a plaintiff must demonstrate either that "a single incident was extraordinarily severe, or that a series of incidents were sufficiently continuous and concerted to have altered the conditions of [his] working

environment." Alfano v. Costello, 294 F.3d 365, 374 (2d Cir. 2002); see Littlejohn v. City of New York, 795 F.3d 297, 321 (2d Cir. 2015) (explaining that "[t]he incidents complained of must be more than episodic; they must be sufficiently continuous and concerted in order to be deemed pervasive[]"); Fincher v. Depository Trust & Clearing Corp., 604 F.3d 712, 723–24 (2d Cir. 2010) (explaining that Section 1981 "plaintiff must show that the workplace was so severely permeated with discriminatory intimidation, ridicule, and insult that the terms and conditions of [his] employment were thereby altered"). "Although a continuing pattern of hostile or abusive behavior is ordinarily required to establish a hostile environment, a single instance can suffice when it is sufficiently egregious." Ferris v. Delta Air Lines, Inc., 277 F.3d 128, 136 (2d Cir. 2001); see Jean-Louis v. Am. Airlines, No. 8 Civ. 3898 (FB), 2010 WL 3023943, at *5 (E.D.N.Y. July 30, 2010) ("Cases in which a single incident was found to be sufficiently severe to support a hostile work environment claim include those where a plaintiff was physically assaulted."). "Courts analyzing hostile work environment claims consider the totality of the circumstances, including 'the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'" Whitley v. Montefiore Med. Grp., No. 13 Civ. 4126 (LTS), 2016 WL 1267788, at *9 (S.D.N.Y. Mar. 30, 2016) (quoting Harris v. Forklift Sys., Inc., 510 U.S. 17, 23 (1993)). "This inquiry has both objective and subjective prongs: 'the misconduct must be severe or pervasive enough to create an objectively hostile or abusive work environment, and the victim must also subjectively perceive that environment to be abusive.'" Id. (quoting Terry v. Ashcroft, 336 F.3d 128, 148 (2d Cir. 2003)). "Severity is [the] hallmark of a hostile work environment claim[,]" which is "not intended to promote or enforce civility, gentility or even

decency." <u>Fernandez v. City of New York</u>, No. 12 Civ. 2125 (RWS), 2012 WL 2402642, at *4 (S.D.N.Y. June 26, 2012).

As an initial matter, the Amended Complaint merely repeats—and does not supplement—the Complaint's allegations that Naprstek's co-workers, in reaction to his objections to Marriott's policies and the Union's decisions, said things like he was "a Czech communist" who did not understand "how things work in America." (<u>Compare</u> ECF No. 1 ¶¶ 46– 47 <u>with</u> ECF No. 97 ¶¶ 49–50). Naprstek, however, withdrew his prior claims of national origin and alienage discrimination. (<u>Compare</u> ECF No. 1 <u>with</u> ECF No. 97; <u>see</u> ECF No. 99-1 at 13–14 (redline showing removal of these claims)). As Marriott points out, to the extent that the Amended Complaint simply relabels the withdrawn national origin and alienage discrimination claims, absent new or different allegations, as a hostile work environment claim, such amendment would be futile. <u>See Antrobus v. N.Y.C. Dep't of Sanitation</u>, No. 11 Civ. 5434 (CBA) (LB), 2016 WL 5394697, at *12 (E.D.N.Y. Feb. 25, 2016) (recommending denial of leave to amend unexhausted, duplicative allegations in support of deficient hostile work environment claims), <u>adopted by</u>, 2016 WL 5390120 (E.D.N.Y. Sept. 26, 2016), <u>aff'd</u>, 704 F. App'x 27 (2d Cir. 2017).

As to the four elements of a hostile work environment claim, Marriott does not directly dispute that Naprstek is of Czech origin and thus a member of a protected class, or that he was qualified as an A-List Banquet Server. (<u>See</u> ECF No. 98 at 15). Rather, Marriott disputes that any of the statements Stamatis or other co-workers made were "because of" Naprstek's national origin or membership in a protected class—as opposed to his oppositions to Marriott's policy changes and the Union's responses thereto—and that those statements do not satisfy the "severe or pervasive" standard to be actionable. (ECF No. 98 at 15).

Although deciding whether the motive of Stamatis and other Marriott employees was Naprstek's Czech alienage or his vocal positions about Marriott and the Union may not be appropriate to resolve at the pleading stage, Naprstek's allegations fail to state a plausible hostile work environment claim.  Even if the "taunts and comments have been pervasive since 2014," (ECF No. 97 at 10 ¶ 51), Naprstek makes "contentions largely about his co-workers[,]" none of whom were alleged to be involved in any decisions about the terms of his employment with Marriott—which, as noted above, continues to employ Naprstek as an A-List Banquet Server. Taylor, 2020 WL 2478663, at *11.  Naprstek's allegations about "stray remarks by [] non-decisionmakers are insufficient," without other allegations, to raise an inference of discrimination by Marriott.  Adam v. Glen Cove Sch., No. 6 Civ. 1200 (JFB) (MLO), 2008 WL 508689, at *8 (E.D.N.Y. Feb. 21, 2008); see Boyar v. Yellen, No. 21-507, 2022 WL 120356, at *3 (2d Cir. Jan. 13, 2022) (summary order) (affirming dismissal of HWE claim where the plaintiff alleged that his supervisor "(1) told him to go back to his desk or she would '[w]ring [his] neck'; (2) yelled at him [and] demand[ed] his employee identification number 'now'; (3) ignored him at a meeting; (4) yelled at him 'very loudly'; and (5) told him he had 90 minutes to complete two certification exams, when he had 60 minutes to complete each"); Dinkins v. Mayorkas, No. 23 Civ. 10660 (RFT), 2024 WL 1806174, at *7 (S.D.N.Y. Apr. 25, 2024) (finding that allegations that plaintiff was excluded from meetings, subjected to unkind comments, and isolated from co-workers failed to plead plausible hostile work environment claim); Brown v. N.Y.C. Dep't of Educ., No. 20 Civ. 2424 (VEC) (OTW), 2021 WL 4943490, at *12 (S.D.N.Y. Aug. 31, 2021) ("[C]ourts in this Circuit have consistently held that allegations of even constant reprimands and work criticism by themselves are not sufficient to establish a hostile environment claim."), adopted by, 2021 WL

4296379 (S.D.N.Y. Sept. 20, 2021); <u>Rettino v. N.Y.C. Dep't of Educ.</u>, No. 19 Civ. 5326 (JGK), 2020 WL 4735299, at *4 (S.D.N.Y. Aug. 14, 2020) (concluding the plaintiff failed to allege plausible hostile work environment claims where plaintiff failed to "sufficiently allege a workplace permeated with discriminatory intimidation, ridicule, and insult"); <u>Gibson v. Wyeth Pharms., Inc.</u>, No. 7 Civ. 946 (LTS), 2011 WL 830671, at *11 (S.D.N.Y. Mar. 9, 2011) (concluding that allegations of explicitly racial comments, three-day suspension, forced overtime, and written warning were insufficient to establish hostile work environment).

Finally, to the extent that Naprstek intended to assert a hostile work environment claim under the NYSHRL or NYCHRL, his failure to allege sufficiently severe mistreatment because of his national origin is similarly fatal.  N.Y. Exec. L. § 290 <u>et seq.</u>; N.Y.C. Admin. Code § 8-101 <u>et seq.</u>; <u>see</u> <u>Davis-Bell v. Columbia Univ.</u>, 851 F. Supp. 2d 650, 671 (S.D.N.Y. 2012) (explaining that "the NYCHRL, like Title VII and the NYSHRL, is still not a general civility code, and petty slights and trivial inconveniences are not actionable"); <u>Massaro v. Dep't of Educ. of City of N.Y.</u>, 121 A.D.3d 569, 570 (1st Dep't 2014) (holding that "conclusory hostile work environment claims" under NYSHRL and NYCHRL failed because alleged workplace behavior amounted to "no more than petty slights or trivial inconveniences") (quoting <u>Williams v. N.Y.C. Hous. Auth.</u>, 61 A.D.3d 62, 79–80 (1st Dep't 2009)).

Accordingly, the Motion, to the extent it seeks to assert a hostile work environment claim under Title VII, Section 1981, the NYSHRL, or the NYCHRL, is denied as futile.

### e.  Civil Theft or Conversion

In support of a civil theft or conversion claim, Naprstek simply alleges that "[a]ll actions" by Marriott constitute conversion.  (ECF No. 97 ¶ 44).  The Court interprets Naprstek to allege

that Marriott's addition of two A-List Banquet Servers lessened the available events at which he could work. (See ECF No. 98 at 15). Marriott argues that the conversion claim is futile because Naprstek "has not and cannot allege a property interest in a shift or work schedule[.]" (Id. at 16).

### i. **Legal Standard**

"The tort of conversion under New York law is defined as 'a defendant exercis[ing] unauthorized dominion over personal property in interference with a plaintiff's legal title or superior right of possession.'" Bank of Am., N.A. v. Vanderbilt Trading USA LLC, No. 17 Civ. 7167 (RER), 2019 WL 8807747, at *8 (E.D.N.Y. Sept. 9, 2019) (quoting LoPresti v. Terwilliger, 126 F.3d 34, 41 (2d Cir. 1997)). A plaintiff asserting a conversion claim must not only establish a right of possession in particular property, but also that that right is superior to that of the defendant. Id.

### ii. **Application**

Marriott is correct that Naprstek failed to allege a plausible conversion claim because he has not identified "a particular, identifiable thing which is [his] property." Schepis, Inc. v. Canelas, No. 20 Civ. 2647 (LJL), 2020 WL 5995127, at *6 (S.D.N.Y. Oct. 9, 2020) (applying Connecticut law); see Bradstreet v. City of Rochester, No. 23 Civ. 6147 (EAW), 2024 WL 1178338, at *12 (W.D.N.Y. Mar. 19, 2024) (granting motion to dismiss conversion claim where plaintiff failed to allege specifically identifiable property). Even if Naprstek had a "vested interest" in shifts as an A-List Banquet Server—which he does not allege—that still would be insufficient to plead a conversion claim. Bradstreet, 2024 WL 1178338, at *12.

Therefore, the Motion, to the extent that it seeks to add a civil theft or conversion claim, is denied as futile.

### f.  Unjust Enrichment

Naprstek simply alleges that "[a]ll actions" by Marriott "fit the elements required for Unjust Enrichment."  (ECF No. 97 at 26 ¶ 48).  Construing the Amended Complaint liberally, the Court construes Naprstek to predicate this claim on an alleged decrease in available shifts following Marriott's addition of two A-List Banquet Servers.  (See ECF No. 98 at 16).  See Naprstek I, 2024 WL 113804, at *4 (noting that OICHI ruling allowed Marriott "to promote two servers from the B-List to the A-List" at the Essex House).  Marriott argues that the unjust enrichment claim is deficient because Naprstek failed to allege that Marriott was enriched, and because Marriott acted in accordance with the OICHI ruling.  (ECF No. 98 at 16–17).

### i.  Legal Standard

To state a claim for unjust enrichment, a plaintiff must plead "(1) that defendant was enriched; (2) that the enrichment was at plaintiff's expense; and (3) it is against equity and good conscience to permit defendant to retain what is sought to be recovered."  Bos. Sci. Corp. v. N.Y. Ctr. for Specialty Surgery, No. 14 Civ. 6170 (RRM) (SMG), 2015 WL 13227994, at *3 (E.D.N.Y. Aug. 31, 2015), adopted by, 2016 WL 8711378 (E.D.N.Y. Jan. 29, 2016).  An unjust enrichment claim is not predicated on an agreement between the parties; "instead, it is a non-contractual, equitable remedy that is inapplicable if there is an enforceable contract governing the subject matter."  Id.

### ii.  Application

Naprstek's unjust enrichment claim "is premised on the same factual allegations as those supporting [his] other claims, and [he has] not alleged distinct damages with respect to this claim[,]" so he cannot maintain this unjust enrichment claim.  Cooper v. Anheuser-Busch, LLC,

553 F. Supp. 3d 83, 115–16 (S.D.N.Y. 2021) (granting motion to dismiss unjust enrichment claim). Furthermore, given the reasonable inference from the Amended Complaint that Marriott must pay the wages of the two added A-List Banquet Servers, Naprstek has not shown that Marriott received any benefit, let alone a "specific and direct" benefit at his expense.  Caro Cap., LLC v. Koch, 653 F. Supp. 3d 108, 124 (S.D.N.Y. 2023); see Pawaroo v. Countrywide Bank, No. 9 Civ. 2924 (ARR) (SMG), 2010 WL 1048822, at *7 (E.D.N.Y. Mar. 18, 2010) (granting motion to dismiss unjust enrichment claim that failed to allege what "undeserved benefits" defendant received "or how they were accrued").  Finally, given Naprstek's inherent concession that Marriott elevated the two servers as a result of the OICHI ruling, he has not plausibly alleged that, even if Marriott somehow obtained a benefit at his expense, "equity and good conscience" justify holding Marriott liable on an unjust enrichment theory.  Mandarin Trading Ltd. v. Wildenstein, 16 N.Y.3d 173, 183 (2011) (explaining that "conclusory allegations that fail to establish that a defendant was unjustly enriched at the expense of a plaintiff warrant dismissal").

The Motion, to the extent that it seeks to add an unjust enrichment claim, is therefore denied as futile.

### g.  Negligence and Negligent Infliction of Emotional Distress

Naprstek appears to contend that Marriott was negligent in its retention and supervision of Stamatis and other co-workers whom he alleges created a hostile work environment.  (ECF No. 97 at 26–27 ¶¶ 49–58).  Marriott contends that New York's Workers' Compensation Law § 29(6) provides the exclusive remedy for Naprstek's complaints and therefore bars a negligence claim.  (ECF No. 98 at 17–19).

###### i.     **Legal Standard**

Section 29(6) of the New York Workers' Compensation Law provides that "[t]he right to compensation . . . shall be the exclusive remedy to an employee . . . when such employee is injured . . . by the negligence or wrong of another in the same employ[.]"  N.Y. Workers' Comp. L. § 29(6).  The Second Circuit has recognized that this statute bars "a common law negligence claim that was asserted on the basis of an alleged hostile work environment because of co-worker harassment."  Ferris, 277 F.3d at 138.

###### ii.     **Application**

As discussed above, (see § III.B.1.d, supra), Naprstek alleges a hostile work environment based on the conduct of his co-workers, and accordingly, the exclusive remedy provisions of the statute preclude his common law negligence claim.  Ferris, 277 F.3d at 138 (affirming grant of summary judgment on negligence claim based on hostile work environment as barred by § 29(6)); see Ross v. Mitsui Fudosan, Inc., 2 F. Supp. 2d 522, 533 (S.D.N.Y. 1998) (dismissing negligence claim for the same reason).  The Motion, to the extent it seeks leave to assert common-law negligence and negligent infliction of emotional distress claims, is denied as futile.

#### h.  **Respondeat Superior**

Naprstek seeks to hold Marriott liable on a theory of respondeat superior, alleging that "[a]ll actions" by Stamatis "were in his professional capacity" and to benefit Marriott.  (ECF No. 97 at 28–29 ¶¶ 59–63).  Marriott counters that "respondeat superior is a theory of liability and not an independent claim."  (ECF No. 98 at 19).  Marriott is correct that "[r]espondeat superior is not an independent cause of action, but a theory of liability that must attach to an underlying claim."  Spence v. City of N.Y., No. 20 Civ. 10090 (LTS), 2022 WL 4537946, at *3 (S.D.N.Y. Sept. 28, 2022);

see Baram v. Doe, No. 23 Civ. 1758 (ER), 2024 232319, at *10 (S.D.N.Y. Jan. 22, 2024) (dismissing

respondeat superior claim).  While Naprstek cannot state an independent respondeat superior

claim, a liberal reading of the Amended Complaint suggests that he could be asserting a negligent

supervision and retention claim, and the Court will analyze the so-called respondeat superior

claim as such.

### i.    Legal Standard

"Under New York law, an employer may be found liable for the conduct of its employee

under theories of negligent hiring, retention, or supervision."  Doe v. City of New York, No. 9 Civ.

9895 (SAS), 2013 WL 796014, at *3 (S.D.N.Y. Mar. 4, 2013).  "A claim for negligent supervision or

retention arises when an employer places an employee in a position to cause foreseeable harm,

harm which the injured party most probably would have been spared had the employer taken

reasonable care in supervising or retaining the employee."  Bouchard v. N.Y. Archdiocese, 719 F.

Supp. 2d 255, 261 (S.D.N.Y. Mar. 24, 2010).  "To state a claim for negligent supervision or

retention under New York law, in addition to the standard elements of negligence, a plaintiff

must show: (1) that the tort-feasor and the defendant were in an employee-employer

relationship; (2) that the employer knew or should have known of the employee's propensity for

the conduct which caused the injury prior to the injury's occurrence; and (3) that the tort was

committed on the employer's premises or with the employer's chattels."  Ehrens v. Lutheran

Church, 385 F.3d 232, 235 (2d Cir. 2004) (per curiam).  "[W]here an employee acts within the

scope of his or her employment, the employer cannot be held liable for a claim of negligent hiring,

retention, or training."  Barnville v. Mimosa Cafe, No. 14 Civ. 518 (GHW), 2014 WL 3582878, at

*2 (S.D.N.Y. July 10, 2014) (citing Talavera v. Arbit, 18 A.D.3d 738 (2d Dep't 2005)).

ii.    **Application**

Applying this standard, Naprstek's allegations that Stamatis' "actions [] were in his professional capacity" and "in an effort to benefit [] Marriott" foreclose a viable negligent supervision claim.  (ECF No. 97 at 29 ¶ 63).  Naprstek not only fails to allege that Stamatis was "acting outside the scope of [his] employment[,]" but he affirmatively alleges that Stamatis' behavior was "within the scope of" his employment with Marriott.  De'Bey v. City of N.Y., No. 20 Civ. 1034 (PGG) (SLC), 2021 WL 8013765, at *16 (S.D.N.Y. Oct. 26, 2021), adopted by, 2022 WL 909790 (S.D.N.Y. Mar. 29, 2022) (dismissing negligent supervision claim where plaintiff failed to allege actions outside the scope of employment).  Furthermore, Naprstek "provides only legal conclusions, rather than factual allegations."  Spence, 2022 WL 4537946, at *6 (dismissing negligent supervision and hiring claim).

The Motion, to the extent it seeks to assert a respondeat superior or negligent supervision and retention claim, is denied as futile.

2.    **Claims Against the Union**

For the same reasons discussed above with respect to the LMRA claim against Marriott, Naprstek's attempt to reassert an LMRA claim against the Union—the only possible claim he could assert—is denied:  Judge McMahon dismissed the LMRA claim against the Union with prejudice and without leave to amend.  (See § II.B., supra).  See Naprstek I, 2024 WL 113804, at *15.  The Motion, to the extent it seeks to add the Union back as a defendant, is denied.

3.    **Claims Against Stamatis**

In the Amended Complaint, Naprstek seeks to add Stamatis as a defendant, asserting against him the claims for age discrimination, retaliation, fraud, defamation, hostile work

environment, civil theft/conversion, unjust enrichment, and negligent infliction of emotional distress.  (ECF No. 97 at 20–28).  Marriott argues that Naprstek's request should be denied on grounds of undue delay, prejudice, and bad faith.  (ECF No. 98 at 19–21).  Stamatis also opposes being joined as a defendant.  (ECF No. 101).

The Court denies Naprstek's request to add Stamatis as a defendant.  First, the Complaint makes clear that Naprstek has long known—certainly since the beginning of this action—that Stamatis is a central character in the events on which Naprstek bases his claims.  In the Complaint, Naprstek alleged that Stamatis "falsely represented to" him the Union's efforts to challenge the OICHI's rulings, "conceal[ed] facts" from and "manipulat[ed] other banquet wait staff," engaged in "bullying tactic[s,]" and "pressured" Naprstek, among other things.  (ECF No. 1 ¶¶ 28, 30–31, 44, 52).  The Amended Complaint similarly repeats these allegations, (ECF No. 97 at 7 ¶¶ 31, 33–34; 10 ¶ 47; 11 ¶ 55), and Naprstek does not point to any new material facts about Stamatis that he did not learn until discovery in this action.  (ECF No. 100 at 8).  See Kiarie v. Dumbstruck, Inc., 473 F. Supp. 3d 350, 359 (S.D.N.Y. 2020) (denying leave to amend to add new defendant where plaintiff failed to show "material newly discovered facts").  Naprstek's allegations demonstrate that he has "been aware of the factual underpinnings of" potential claims against Stamatis "since the outset of this litigation," and before, warranting denial of his request to add Stamatis now. Cnty. of Washington v. Cnties. of Warren & Washington Indus. Dev. Agency, 2 F. App'x 71, 75 (2d Cir. 2001) (summary order); accord Ramirez v. M L Rest. Corp., No. 14 Civ. 4030 (VEC), 2015 WL 12564227, at *1 (S.D.N.Y. Mar. 13, 2015) (denying leave to add new claims against new defendants where information about them was within plaintiffs' possession from the beginning of the action); Augustine v. AXA Fin'l, Inc., No. 7 Civ. 8362 (RJS), 2008 WL 5025017, at *6 (S.D.N.Y.

Nov. 24, 2008) (denying motion to amend where plaintiff had long "had sufficient information to assert claims against the proposed individual defendants"); see also Ruotolo v. City of New York, 514 F.3d 184, 192 (2d Cir. 2008) (affirming denial of leave to amend where plaintiff "certainly knew about his own conversation with [the union]" when original complaint was filed).

Second, allowing Naprstek to add Stamatis at this stage, three years into the case—after discovery has closed following multiple extensions and court conferences, and on the precipice of progressing this case toward dispositive motions and trial of any remaining claims—would prejudice both Marriott and Stamatis. Adding Stamatis would certainly require Marriott—who continues to employ Stamatis (ECF No. 98 at 20)—"to expend significant additional resources to conduct discovery and prepare for trial" and "significantly delay the resolution of this dispute" by requiring the reopening of discovery. Block v. First Blood Assocs., 988 F.2d 344, 350 (2d Cir. 1993); see Heyliger v. West, No. 18 Civ. 336 (TJM) (TWD), 2021 WL 11549430, at *6 (denying motion to amend to add new defendant, which would have caused "a further delay in resolution of the dispute to allow time for service . . . and additional discovery to address the proposed new claims against him"); Fabian v. City of N.Y., No. 16 Civ. 5296 (GHW), 2018 WL 2138619, at *11 (S.D.N.Y. May 9, 2018) (denying leave to amend, after fact discovery closed following four extensions, to add new defendants whose identities plaintiff had known for at least nine months but did not timely seek to add); Lyondell-Citgo Refining, LP v. Petroleos De Venezuela S.A., No. 2 Civ. 795 (CBM) (AJP), 2004 WL 2650884, at *2–3 (S.D.N.Y. Nov. 22, 2004) (noting that prejudice is "[p]erhaps the most important factor" and denying leave to amend filed after close of discovery where party "knew or should have known of these transactions and could have amended in a timely manner, but did not do so"), aff'd, 2005 WL 883485 (S.D.N.Y. Apr. 14, 2005). Furthermore,

to the extent Naprstek seeks to add Stamatis as a defendant for the purpose of obtaining discovery from him, the Court observes that Naprstek sought discovery from other non-parties during the fact discovery period (ECF Nos. 72; 77; 79; 81), and he offers no reason why he could not have timely done so as to Stamatis as well.  (See generally ECF No. 100).[8]

Therefore, the Motion, to the extent that it seeks to add Stamatis as a defendant, is denied.

### IV. CONCLUSION

For the reasons set forth above, the Motion is **DENIED** in all respects.  By October 25, 2024, the parties shall meet and confer and file a joint letter of no longer than two pages, stating whether either party seeks to pursue expert discovery (see ECF No. 62) and, if not, proposing how to move this action toward resolution—whether through settlement negotiations, dispositive motions, or proceeding to trial.

The Clerk of Court is respectfully directed to close ECF No. 97.

Dated:       New York, New York                    SO ORDERED.
             October 9, 2024

_____
SARAH L. CAVE
United States Magistrate Judge

---

[8] Although Marriott also asserts bad faith as a ground for denying Naprstek's request to add Stamatis as a defendant (ECF No. 98 at 21), the Court need not reach this issue given that undue delay and prejudice provide sufficient grounds to deny the request.